IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM ALFRED HICKS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-CV-38 |
| | ) | |
| MOUNT AIRY-SURRY COUNTY | ) | |
| AIRPORT AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This case arose out of a dispute over a lease for an airplane hangar at an airport in Surry County. The plaintiff, Billy Hicks, was both a tenant and a member of the airport's governing body when other board members voted to terminate his hangar lease because of fire code violations. After failing to obtain relief in state court proceedings, Mr. Hicks sued the Airport Authority, its seven board members, its attorney, and the Surry County fire marshal in this Court, claiming they violated his constitutional rights. He contends that the fire code violations were a pretext for the lease termination and other adverse actions, which were in fact motivated by personal animus towards Mr. Hicks for positions he had taken as a board member on unrelated airport business in the past. For the reasons more fully set forth below, all claims against all defendants will be dismissed.

## I.    FACTS ALLEGED IN COMPLAINT

The Mount Airy-Surry County Airport Authority (the "Authority") is a governmental entity jointly formed by the City of Mount Airy and the County of Surry

pursuant to North Carolina law to operate the Mount Airy-Surry County Airport. (Doc. 18 at ¶ 7.) Plaintiff Billy Hicks was appointed as an Authority board member by the City of Mount Airy in 2010 and served in that position through 2013. (Doc. 18 at ¶¶ 19-20.) He also owns two planes he has kept at the airport since 2008. (Doc. 18 at ¶ 2.)

After Mr. Hicks voiced opposition to other board members on two separate matters, (*see* Doc. 18 at ¶¶ 25, 59), he began receiving "pressure" to resign his board position. (Doc. 18 at ¶ 62.) The defendants later took a series of actions resulting in a "constructive ban" on Mr. Hicks's personal use of the airport. (Doc. 18 at ¶ 109.) Following an incident in which Mr. Hicks used spray paint inside the hangar he rented from the Authority, the defendant board members voted to terminate Mr. Hicks's lease if it were found he had violated any laws. (Doc. 18 at ¶¶ 65, 67, 71, 103.) The Authority's attorney, defendant Joseph Williams, described the incident to the Surry County Fire Marshal, defendant Roger Jones, who, without further investigation, generated a report listing fire code violations. (Doc. 18 at ¶¶ 73-75.)

A number of other tenants had lease and fire code violations that the board and fire marshal did not investigate. (*See* Doc. 18 at ¶¶ 42, 88.) Other tenants have been given time to fix violations discovered during fire marshal inspections. (Doc. 18 at ¶ 82.) However, after Mr. Hicks's violation, Mr. Williams sent a letter terminating Mr. Hicks's hangar lease and removing his name from the waiting list for an additional hangar, citing ten fire code violations and possible OSHA violations. (Doc. 18 at ¶ 85; *see also* Doc. 32-1 at 10.) Mr. Hicks asserts he was treated differently than similarly-situated tenants because of his opposition to other board members in matters of Authority business. (Doc.

2

18 at ¶ 90.) Around this time, Mr. Hicks also resigned his position as an Authority board member. (*E.g.*, Doc. 18 at ¶ 22.) The actions of all defendants "forc[ed] his resignation." (Doc. 18 at ¶ 130.)

## II.    OVERVIEW OF CLAIMS AND DEFENSES

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983).

Mr. Hicks framed his complaint as three claims against all defendants under 42 U.S.C. § 1983: violations of equal protection, violations of due process, and conspiracy to violate his equal protection and due process rights. (*See* Doc. 18 at 21, 25, 27.) Underlying these claims are his contentions that the defendants retaliated against him for exercising his First Amendment rights, (*see* Doc. 18 at ¶¶ 101, 137, 141), and that the defendants unconstitutionally deprived him of liberty and property rights. (*See* Doc. 18 at ¶¶ 108, 136.) Mr. Hicks seeks damages, a renewed hangar lease, and reinstatement on the waiting list for an additional hangar lease in the same wait-list position he held in May 2013. (Doc. 18 at pp. 29-30 ¶¶ 1, 5.)

All defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted and, alternatively, because the claims are barred by res judicata and collateral estoppel. (Docs. 32, 38, 40.)

3

All defendants additionally assert that the intracorporate conspiracy doctrine bars the conspiracy claim. (Docs. 33 at 15; 39 at 15; 41 at 12.)

The board member defendants additionally maintain the claims are barred because of absolute and qualified immunity, (Doc. 33 at 20), and defendant Mr. Jones, the fire marshal, asserts qualified immunity. (Doc. 41 at 15.) The Authority and Mr. Jones also contend the claims should be dismissed because Mr. Hicks has not adequately alleged that his injuries flowed from a governmental policy or custom. (Docs. 33 at 24; 41 at 16.)

## III. ANALYSIS

### A. Issue and Claim Preclusion

This is not the first lawsuit Mr. Hicks brought concerning these factual allegations. In June 2013 Mr. Hicks filed a declaratory judgment action in state superior court seeking an order enjoining the Authority from evicting him. (Doc. 32-1 at 2 ¶ 12.) Mr. Hicks voluntarily dismissed that suit in September 2014, (Doc. 32-2), without having vacated the hangar. (*See* Doc. 18 at ¶ 86.) Meanwhile, in August 2014 the Authority brought a state court summary ejectment action against Mr. Hicks, alleging his written lease had ended that May. (Doc. 32-3.) In defense, Mr. Hicks asserted that the Authority violated his constitutional right to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983, (Doc. 32-4 at ¶ 2), but he did not file any counterclaims, and it does not appear that the state court judge addressed these constitutional defenses in her decision. (*See* Doc. 32-6.) The state court ruled in favor of the Authority, holding that the lease had expired without being renewed. (Doc. 32-6 at ¶ 6.) Mr. Hicks filed a notice of appeal but later vacated the hangar space, and the appeal was dismissed as moot. (Docs.

4

32-7; 32-8 at ¶ 3(c); 32-9.)[1]

The defendants contend that Mr. Hicks's claims in this lawsuit are barred by issue and claim preclusion. (Docs. 33 at 17-20; 39 at 20-22; 41 at 16-19.) "Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). Therefore, the Court must apply North Carolina law to determine the preclusive effect of the ejectment judgment.

### 1. Claim Preclusion

Res judicata, or claim preclusion, bars the relitigation of claims and counterclaims that were or could have been raised in a prior proceeding between the same parties. *Sartin*, 535 F.3d at 287. A litigant who fails to raise a compulsory counterclaim risks being precluded from asserting that claim in a separate action. *Fickley v. Greystone Enters., Inc.*, 140 N.C. App. 258, 261, 536 S.E.2d 331, 334 (2000)). "Generally, a counterclaim is compulsory if 'it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.'" *Id.* at 260, 536 S.E.2d at 333 (quoting N.C. R. Civ. P. 13(a)). In contrast, where a plaintiff seeks a remedy for a separate and distinct act leading to a separate and distinct injury, the claim is not barred even if both acts arose from a single core of operative facts. *Tong v. Dunn*,

---

[1] While the state court action was still pending, Mr. Hicks filed the complaint in this Court. (*See* Doc. 16-7 at 1, 18.)

752 S.E.2d 669, 676 (N.C. Ct. App. 2013) (citing *Bockweg v. Anderson*, 333 N.C. 486, 428 S.E.2d 157 (1993)).

If Mr. Hicks were making a claim that his First Amendment rights were violated by the board's actions, such a claim would be barred by res judicata. Under applicable North Carolina law, retaliatory lease termination claims are compulsory counterclaims in summary ejectment if they are based on the same factual claims and involve the same determinative questions. *Fickley*, 140 N.C. App. at 261-62, 536 S.E.2d at 334.

Here, however, Mr. Hicks is not basing his § 1983 claims on his First Amendment rights; rather, he relies on his equal protection and due process rights.[2] The defendants have not cited authority to support their contention that all of the claims in this suit were compulsory counterclaims to the summary ejectment action. (Doc. 33 at 18-19.) The Court will deny the motion to dismiss based on res judicata.

### 2. Issue Preclusion

Collateral estoppel, or issue preclusion, bars the relitigation of specific issues that were actually determined in a prior action that resulted in a final judgment on the merits. *Sartin*, 535 F.3d at 287-88. It applies when (1) the issues are the same as those involved in the prior action; (2) the issues were raised and actually litigated in the prior action; (3) the issues were material and relevant to the disposition of the prior action; and (4) the determination of those issues in the prior action was necessary and essential to the

---

[2] Though Mr. Hicks mentions free speech rights several times, (*see, e.g.*, Doc. 18 at ¶¶ 96, 101, 106, 141, 147), he does not appear to assert a § 1983 claim based on violation of his First Amendment rights and, rather, explicitly bases his claims only on equal protection and due process. (*See* Doc. 18 at 21, 27.)

resulting judgment. *Beckwith v. Llewellyn*, 326 N.C. 569, 574, 391 S.E.2d 189, 191 (1990). "A very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical. If they are not identical, then the doctrine of collateral estoppel does not apply." *Id.*

As discussed *supra*, the only issues squarely before the state court were whether the lease contained a renewal provision that allowed Mr. Hicks to renew at his option and whether there had previously been an agreement to renew between the parties. (*See also* Doc. 16-7.) The state court expressly found that no renewal agreement was made and did not address Mr. Hicks's constitutional defense. (Doc. 32-6 at ¶ 6.)

Accordingly, to the extent that Mr. Hicks claims he is entitled to renewal of the lease, that claim is precluded by the state court decision. All other claims are not precluded and will be considered.

## B. Absolute Immunity

The board members contend they are entitled to absolute immunity because they are equivalent to a legislature. Local legislators are absolutely immune from suit under § 1983 for legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). This immunity extends to "[o]fficials outside the legislative branch . . . when they perform legislative functions" and attaches to "all actions taken in the sphere of legitimate legislative activity." *Id.* at 55, 54 (internal quotations omitted). Actions that are administrative rather than legislative in nature are not protected by absolute immunity. *See id.* at 55.

The board actions complained of here were not legislative in nature. Even if the

7

board members perform some legislative functions in their oversight of the Authority, termination and non-renewal of leases "affect specific individuals rather than formulate broad public policy" and do not involve "the adoption of prospective, legislative-type rules . . . that establish a general policy affecting the larger population." *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 184 (4th Cir. 2011) (citations and internal quotations omitted); *see also Alexander v. Holden*, 66 F.3d 62, 67 (4th Cir. 1995).

Defendant board members have cited no authority to support their conclusory argument that termination of the lease was a legislative activity. (*See* Doc. 33 at 20-21.) They are not entitled to absolute immunity.

### C. Equal Protection Claims

Mr. Hicks alleges an equal protection violation because he was treated differently than other hangar tenants with fire code violations. (Doc. 18 at ¶¶ 87-90, 100.) He alleges that this disparate treatment occurred because he voiced opposition to other board members on two separate matters. (*See* Doc. 18 at ¶¶ 21-25, 59.)[3]

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The equal protection mandate "does not take from the States all power of classification," *Pers. Adm'r v. Feeney*, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all

---

[3] As noted *supra*, to the extent this claim is based on retaliatory termination, it is barred by res judicata.

relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Equal protection claims usually arise when plaintiffs allege arbitrary classification as members of an identifiable group. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). In some circumstances, equal protection plaintiffs may prevail without invoking membership in a protected class by showing they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam); *see also Lauth v. McCollum,* 424 F.3d 631, 633 (7th Cir. 2005) ("The paradigmatic 'class of one' case, [ ] sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen.").

While the parameters of a "class of one" cause of action in the context of discretionary decisionmaking are in flux,[4] "it is not sufficient for a plaintiff simply to show that the defendants' *actual* motive for their disparate treatment was irrational; rather

---

[4] In *Engquist*, the Supreme Court limited the availability of the "class of one" theory, concluding it does not apply in the context of public employment because the state action involved "discretionary decisionmaking based on a vast array of subjective, individualized assessments" and "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." 553 U.S. at 603. Several courts have questioned whether "class of one" claims in the context of discretionary decisionmaking remain viable after *Engquist*. *See, e.g.*, *Rapp v. Dutcher*, 557 F. App'x 444, 449 (6th Cir. 2014); *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009); *United States v. Moore*, 543 F.3d 891, 898-99 (7th Cir. 2008); *Uzoukwu v. Prince George's Cmty. Coll.*, No. DKC 12-3228, 2013 WL 4442289, at *9-10 (D. Md. Aug. 15, 2013); *Mathis v. McDonough*, No. ELH-13-2597, 2014 WL 3894133, at *28 (D. Md. Aug. 7, 2014). The Fourth Circuit has not yet addressed the post-*Engquist* viability of class-of-one equal protection claims. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 542 n.13 (4th Cir. 2013) (observing that other circuits have discussed the impact of *Engquist* on "class of one" claims, but concluding that "such discussion is not necessary to resolving the claim before us.").

he must negate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Kirby v. City of Elizabeth City*, 388 F.3d 440, 447 (4th Cir. 2004) (quoting *Bd. of Trs. v. Garrett*, 531 U.S. 356, 367 (2001)); *see also Herman v. Lackey*, 309 F. App'x 778 (4th Cir. 2009) (unpublished) (per curiam) (applying *Kirby* in the Rule 12(b)(6) context).

### 1. Board Members

#### a. Alleged Constitutional Violation

Mr. Hicks alleges that board members treated him differently than similarly-situated tenants when they voted to terminate his lease.

In June 2011, Mr. Hicks entered into a three-year lease with the Authority for a hangar. (Doc. 18-1 at 40.) Around that time, in his capacity as a board member, Mr. Hicks argued for a fuel audit that the chairman of the board, John Springthorpe, opposed. (Doc. 18 at ¶¶ 21-22.) Thereafter, Mr. Springthorpe "resented" him and "treated [him] differently" in unspecified ways. (Doc. 18 at ¶ 25.) In April 2012, Mr. Hicks again disagreed with Mr. Springthorpe and other board members about whether a particular flight instructor should be allowed to use the airport. (Doc. 18 at ¶¶ 44, 59.) Mr. Hicks alleges that his support of this flight instructor caused board members to retaliate against him. (Doc. 18 at ¶¶ 59-62.)

In March 2013 Mr. Hicks spray-painted his aircraft inside his hangar, and "overspray" resulted "in a mist of paint adhering to . . . other aircraft." (Doc. 18 at ¶¶ 65, 67.) Three other tenants contacted the Authority about damage to their aircraft and personal property stored in the hangars. (Doc. 18 at ¶ 68.) Mr. Hicks's insurance

company paid for the damage, and he maintains there were no further complaints from the other tenants after they were compensated. (Doc. 18 at ¶¶ 69-70.) On May 17, 2013, Mr. Williams sent Mr. Hicks a letter on behalf of the Authority terminating his lease, citing this incident. (Doc. 18 at ¶ 85.)

Mr. Hicks contends that the defendant board members used the overspray incident as a pretext for terminating his lease, not renewing his lease, and not granting him an additional lease for a second hangar. (Doc. 18 at ¶¶ 71-87.) He alleges that other hangar tenants had fire code violations "equal to" his own violation, (Doc. 18 at ¶¶ 88-89), that his own violation was minor, (*see* Doc. 18 at ¶ 82 ("paint spraying as a fire code violation only lasts as long as the paint spraying does")), and that he was treated differently than similarly situated tenants because of his opposition to other board members in the matter of the flight instructor. (Doc. 18 at ¶ 90.)

Relying on *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995), and *Jetstream Aero Servs., Inc. v. New Hanover Cty.*, No. 88-1748, 1989 WL 100644 (4th Cir. Aug. 15, 1989) (unpublished), Mr. Hicks contends that "[s]elective prosecution is actionable under the federal Constitution when the prosecution or enforcement arises from retaliation against the plaintiff for the exercise of a constitutional right, like free speech." (Doc. 45 at 10.)

There are several problems with this contention. First, it is highly doubtful that Mr. Hicks has a constitutional right as a board member to disagree with other governmental board members. *See Nev. Comm'n on Ethics v. Carrigan*, 131 S. Ct. 2343, 2350 (2011) (holding that a legislator's vote is not First Amendment speech); *Garcetti v.*

11

*Ceballos*, 547 U.S. 410, 421 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."). Second, the complaint itself shows a rational basis for treating Mr. Hicks differently from other tenants with lease violations: he was the only tenant whose violations caused serious property damage to other tenants' airplanes. (Doc. 18 at ¶¶ 42, 88.)

A plaintiff proceeding on an equal protection claim subject to rational basis review "must negate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Kirby*, 388 F.3d at 448 (quoting *Garrett*, 531 U.S. at 367). "[A] discriminatory purpose is not presumed." *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). Accepting as true all the factual allegations in the complaint, as this Court must do on a motion to dismiss, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), Mr. Hicks's allegations are likely insufficient to support his claim that the defendants' actions here were irrational. *See Lackey*, 309 F. App'x at 785 (finding that the complaint failed to negate the hypothetical rational basis); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (same); *Ruttenberg v. Jones*, 283 F. App'x 121, 131 (4th Cir. 2008) (unpublished) (per curiam) (same); *McWaters v. Cosby*, 54 F. App'x 379, 383 (4th Cir. 2002) (unpublished) (per curiam) (same).

### b. Qualified Immunity

Assuming without deciding that Mr. Hicks stated a claim for an equal protection violation, the board member defendants are entitled to qualified immunity. Public officials performing discretionary functions are generally granted qualified immunity and

12

shielded from civil damages unless their "conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Analysis of a qualified immunity defense "requires three distinct steps: (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Simmons*, 47 F.3d at 1385.

Mr. Hicks's allegations are insufficient to establish that board members would have known their actions violated a clearly established right. As noted, First Amendment protections are not clearly established for speech by a member of a governmental board about and in connection with decisions made by that board. Moreover, the application of the class-of-one theory of liability to situations involving discretionary decisionmaking is quite "murky." *Jetstream*, 1989 WL 100644, at * 1; *see supra* note 4.

Mr. Hicks contends that his constitutional right to equal protection, including the right against selective enforcement, was well established. (Doc. 45 at 23.) It is not, of course, enough that the general, abstract right to equal protection is well established; the right must be well established "at a high level of particularity." *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); *see also Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). To this end, Mr. Hicks relies on one unpublished Fourth Circuit case and several cases from other jurisdictions to support his selective enforcement argument. (Doc. 45 at 10-13.) None constitute the kind of authority that results in a clearly established right,

13

and all are distinguishable in meaningful ways.

In *Jetstream*, the unpublished Fourth Circuit case, the plaintiff was not a government official, and there was evidence of a reasonable temporal connection between the expressed animosity and the discriminatory conduct that could not otherwise be explained. 1989 WL 100644, at *3. Here, the alleged animosity arose at least a year before the alleged discriminatory act, which was otherwise based on a firm factual footing: a lease violation about which caused property damage and about which other tenants had complained. As noted, "a discriminatory purpose is not presumed; there must be a showing of clear and intentional discrimination." *Snowden*, 321 U.S. at 8 (internal quotations and citations omitted).

The *Esmail* case from the Seventh Circuit involved an "orchestrated campaign of official harassment" against the plaintiff, including police harassment, intrusive surveillance, repeated and unjustified police stops, and false criminal charges. 53 F.3d at 178-79. This ongoing harassment describes conduct of a different kind and degree than what Mr. Hicks alleges—namely, that board members initiated a one-off investigation into alleged fire code violations that resulted in the termination and non-renewal of his lease and his removal from a waiting list for future leases.

Moreover, the Seventh Circuit has questioned *Esmail*'s ongoing validity, *see Lauth,* 424 F.3d at 633, and other courts have raised serious questions about "class of one" cases like this one. *See supra* note 4. Indeed, the Fourth Circuit has called the Seventh Circuit's selective enforcement holding in *Esmail* "a novel theory." *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999). Novel claims are precisely what

14

qualified immunity doctrine evolved to protect against. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."); *Creighton*, 483 U.S. at 640 ("[I]n the light of pre-existing law the unlawfulness must be apparent.").

In any case, for "clearly established" purposes, existing precedent is limited to "the decisions of the Supreme Court, this [Fourth Circuit] court of appeals, and the highest court of the state in which the case arose." *City of Goldsboro*, 178 F.3d at 251 (internal quotations omitted). None of the cases Mr. Hicks cites fall into any of these categories.

The equal protection claims against the board member defendants are dismissed on qualified immunity grounds.

### 2.    The Airport Authority

"Unless a government entity has a policy or custom of discrimination, a court will not attribute an individual's constitutional violations to the government entity." *Lefemine v. Wideman*, 758 F.3d 551, 557 (4th Cir. 2014). Because the Authority is a "unit of local government" under North Carolina law, (Doc. 18 at ¶ 7(b)), Mr. Hicks must allege that his deprivation was caused by a "constitutionally forbidden rule or procedure." *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981). To hold the Authority liable, official policy must be "the moving force of the constitutional violation." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Here, Mr. Hicks has not alleged any such policy, rule, or procedure and indeed has alleged facts to the contrary. (*See* Doc. 18 at ¶¶ 61, 113; *see also* Doc. 45 at 6 (The

15

Authority had "an almost automatic renewal policy" for leases that the board members ignored in terminating his lease.))  Elsewhere, Mr. Hicks alleges that the board members' vote to terminate his lease amounted to "approving new policy."  (Doc. 18 at ¶ 107.)

"An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'"  *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (citation omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) and *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987)).  A decision to terminate one particular lease is not ordinarily a formulation of a new policy.  Rather, it represents the exercise of "discretionary authority in purely operational aspects of government."  *Spell*, 824 F.2d at 1386.  A conclusory allegation that the termination of the lease was "policy" is not sufficient to state a claim.

In the absence of any factual allegations indicating that the board had an unconstitutional official policy that was the moving force behind the termination of the lease and other disputed actions, the equal protection claims against the Authority are dismissed.

### 3.    Mr. Williams

Mr. Hicks alleges that Mr. Williams, a private lawyer who represented the Authority during the relevant time period, violated his right to equal protection through the investigation of the alleged fire code violations and later selective enforcement of lease provisions.  (Doc. 18 at ¶¶ 15, 112, 121.)  Mr. Williams is entitled to qualified

16

immunity for the same reasons as the board members. *See Filarsky v. Delia*, 132 S. Ct. 1657 (2012) (holding that a private attorney retained to carry out the work of the government is entitled to qualified immunity). The equal protection claims against Mr. Williams are dismissed on qualified immunity grounds.

### 4. Mr. Jones

Mr. Hicks alleges that the fire marshal, Mr. Jones, violated his right to equal protection by preparing an inspection report at the Authority's request without physically inspecting Mr. Hicks's hangar. (Doc. 18 at ¶¶ 112, 118.) As noted *supra*, to adequately state a class-of-one equal protection claim, Mr. Hicks must allege facts indicating he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

Mr. Hicks alleges that the fire marshal had "a duty to inspect all buildings [sic] structures or premises for the purpose of ascertaining any code violations and ensuring those violations are corrected," (Doc. 18 at ¶ 74), and that the fire marshal had performed "actual physical inspections" at unspecified other occasions. (Doc. 18 at ¶ 82.) This statement of an alleged duty, plus a vague reference to other physical inspections, is not sufficient to allege that Mr. Jones treated Mr. Hicks differently than similarly situated individuals. It does not allege that Mr. Jones's regular practice was to inspect premises before issuing a report and that he intentionally treated Mr. Hicks differently. It does not allege that Mr. Jones knew about fire code violations by other tenants and responded differently to them. In the absence of any allegation that Mr. Jones was aware of violations in other hangars, the fact that Mr. Jones did not investigate whether other

17

tenants had engaged in violations similar to Mr. Hicks's spray painting violation, (*see* Doc. 18 at ¶ 78), fails to state a claim that Mr. Jones intentionally treated similarly situated tenants differently. Allegations that the Authority treated other tenants with violations differently does not translate into a claim against the Fire Marshal.

Though a court reviewing factual allegations on a motion to dismiss under Rule 12(b)(6) takes the facts in the light most favorable to the plaintiff, it need not accept as true "unwarranted inferences." *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citations omitted). Nor is it required to accept conclusory and speculative allegations. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Mr. Hicks's complaint is devoid of facts supporting his equal protection violation claim against Mr. Jones, and this claim is dismissed.

### D. Due Process Claims

Mr. Hicks claims a property interest in the use of the public airport. (Doc. 18 at ¶ 108.) He alleges all defendants violated his property rights "in forcing his resignation from the Board of the Airport Authority, terminating Plaintiff's lease for the hangar, prohibiting tie-down on the ramp, removing Plaintiff's name from the waiting list, removing individuals involved with Plaintiff from the waiting list, and denying access to a public airport." (Doc. 18 at ¶ 130.) He contends these actions deprived him of property interests in the use of the airport without adequate due process of law. All defendants have moved to dismiss for failure to state a claim. (Docs. 32, 38, 40.) Because Mr. Hicks has not adequately alleged a constitutionally protected property right, this claim will be dismissed as to all defendants.

To the extent the claim is based on the termination of the lease and the refusal to renew the lease, Mr. Hicks has already received due process of law via the state court summary ejectment proceedings. Moreover, the state court previously ruled that Mr. Hicks did not have a contractual right to renewal of his lease, (Doc. 32-6 at ¶ 6), and Mr. Hicks has not explained how a non-existent contractual right can morph into a property right subject to constitutional protections. His passing references to "tie-down" rights, (Doc. 18 at ¶¶ 130, 136), do not state a claim. He has pleaded no facts to support his conclusory allegations that he has a liberty interest in the use of the airport, (Doc. 18 at ¶¶ 136, 148), or that he has been "constructively banned" from the airport. (Doc. 18 at ¶ 136.) Indeed, he has not alleged even one instance when he tried to access the airport and was prevented from doing so.

To the extent he bases his claim on the allegations that he "received pressure from the Mount Airy commissioners to resign his appointment as an Airport Authority Board member," (Doc. 18 at ¶ 62), and that all defendants "forc[ed] his resignation," (Doc. 18 at ¶ 130), those allegations are either levied against persons other than the defendants to this action or are entirely conclusory. To the extent the claim is based on allegations that his friends have also been removed from the hangar waiting list because of association with him, (Doc. 18 at ¶¶ 94, 117, 136, 145), Mr. Hicks does not have standing to assert the claims of others. Finally, he alleged no facts that would support his conclusory allegation that he had a property or liberty interest in being on the waiting list for a second hangar. (Doc. 18 at ¶ 130); *see Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) (holding that to have a property interest in a government benefit, a person must "have a legitimate claim

of entitlement to it").

### E. Conspiracy Claims

Mr. Hicks alleges a conspiracy between and among all defendants to deprive him of his constitutional rights by acting together "to falsify a Fire Marshal's Inspection Report, a vote or agreement to terminate Plaintiff's lease and remove his name from the waiting list for future hangar space, remove Plaintiff's friends [sic] name from the waiting list; and deprive Plaintiff of fair and reasonable use of a public airport." (Doc. 18 at ¶ 126.) The Court construes the amended complaint to assert a conspiracy to deprive Mr. Hicks of his constitutional rights to equal protection and to due process.

A civil conspiracy under § 1983 is established by evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy that resulted in the deprivation of a plaintiff's constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Other courts also have emphasized the need to prove a deprivation of a constitutional right or privilege. *See, e.g.*, *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984) ("[I]t remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient."); *accord Byrd v. Hopson*, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003) (Under North Carolina state law, "there is no independent cause of action for [common law] civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct."), *aff'd in part and rev'd in part on other grounds*, 108 F. App'x 749 (4th Cir. 2004).

### 1. Due Process

As noted *supra*, Mr. Hicks's claim for due process violations is being dismissed in absence of a property or liberty interest. *See* discussion pp. 18-19. A liberty or property interest is also required for a claim of conspiracy to violate due process rights. *See Hinkle*, 81 F.3d 421 (noting that a deprivation of a constitutional right is required); *Millerd*, 191 F.3d at 957 (same); *Villanueva*, 723 F.2d at 418 (same). The claim that there was a conspiracy to violate his due process rights fails in the absence of any such due process rights.[5]

## 2. Equal Protection

Mr. Hicks's claim based on a conspiracy to violate his equal protection rights also fails. As to the fire marshal, Mr. Hicks has not made the required factual showing to support conspiracy claims. He has made only a "bare assertion of a conspiracy" between Mr. Jones and any of the Authority defendants. *Hardrick v. Canter*, No. DKC 11–3032, 2012 WL 5409739, at *5 (D. Md. Nov. 5, 2012) (internal quotations omitted). The allegations of conspiracy between and among the Authority defendants fail because persons acting on behalf of the same entity generally cannot be in a conspiracy with each other. Accordingly, the conspiracy claims are dismissed against all defendants.

### a. Mr. Jones

---

[5] The Fourth Circuit has noted it is possible that a claim of civil conspiracy can survive after an officer was found not liable on a related but distinct constitutional claim. *See Hinkle*, 81 F.3d at 421 (noting that the claim of a civil conspiracy to deny appellants access to the courts "is not mooted by the mere fact Officer Lake was found not liable for using excessive force against Wilson"). That is not the situation here, because Mr. Hicks alleges that the conspiracy constituted the same factual conduct, no less and no more, that he alleges in support of his other § 1983 claims. Nor is this a case involving an unsuccessful attempt to violate someone's constitutional rights, which might support a separate claim for conspiracy.

"Where the complaint makes only conclusory allegations of a conspiracy under §
1983 or § 1985 and fails to allege facts suggesting an agreement or meeting of the minds
among the defendants, the court may properly dismiss the complaint." *Sales v. Murray*,
862 F. Supp. 1511, 1517 (W.D. Va. 1994). "[T]he factual allegations must amount 'to
more than rank speculation and conjecture' and must 'give rise to an inference that each
alleged conspirator shared the same conspiratorial objective.'" *Jones v. Clarke*, No.
7:14CV00422, 2015 WL 5254938, at *4 (W.D. Va. Sept. 9, 2015) (quoting *Hinkle*, 81
F.3d at 422).

Mr. Hicks alleges no facts indicating that any of the board members were in a
conspiracy with the fire marshal. No discussions or communications between Mr. Jones
and any board member are set forth. (*See* Doc. 18 at ¶¶ 71-85.) In the absence of some
sort of communication, it is difficult to see how there could be a meeting of the minds.
The facts alleged are insufficient to state a claim that the board members were in a
conspiracy with the fire marshal to deprive Mr. Hicks of his constitutional rights.

The complaint alleges more interaction between the fire marshal and Mr.
Williams, the attorney for the Authority. Mr. Hicks alleges that Mr. Williams took part
in the investigation of the over-spray incident, including contacting the fire marshal's
office and describing the incident to Mr. Jones, (Doc. 18 at ¶¶ 72-73); that Mr. Williams
"relied on information procured from third parties as opposed to firsthand knowledge of
the paint incident" in speaking with Mr. Jones, (Doc. 18 at ¶ 73); and that he "knowingly
helped [Mr. Jones] concoct" a report that Mr. Williams could then use to terminate the
plaintiff's lease. (Doc. 18 at ¶¶ 79, 81.) Mr. Hicks also alleges that Mr. Jones did not

perform an inspection before issuing a "Fire Prevention Inspection Report" and that the fire code violations were "trumped up" by Mr. Williams and Mr. Jones "to ensure the pretext for the [lease termination]." (Doc. 18 at ¶¶ 143, 103.) Mr. Williams "acted, alone and in concert with Defendant Jones, to produce an [sic] Fire Prevention Inspection Report . . . that would give Board Members a pretext to terminate Plaintiff's lease." (Doc. 18 at ¶ 118.)

These facts do not "give rise to an inference" that Mr. Jones and Mr. Williams "shared the same conspiratorial objective," *Hinkle*, 81 F.3d at 422, or otherwise had a meeting of the minds to violate Mr. Hicks's equal protection rights. The allegation that Mr. Williams and Mr. Jones concocted a report, (Doc. 18 at ¶ 81), is contradicted elsewhere in the complaint when Mr. Hicks acknowledges he violated the fire code. (Doc. 18 at ¶ 82.) The allegation that the fire code violations were "trumped up," (Doc. 18 at ¶ 103), suffers from the same deficiency. The allegation that the purpose of the report was "to ensure the pretext" for the lease termination, (Doc. 18 at ¶ 103), concerns a purported agreement between Mr. Williams and the board members, not any agreement with Mr. Jones.

The mere fact that Mr. Williams and Mr. Jones talked is insufficient to support a conspiracy claim. *See Smith v. McCarthy*, 349 F. App'x 851, 858 (4th Cir. 2009) (unpublished) (per curiam) ("The allegations in the Smiths' complaint describe that, at the time of arrest, these Defendants 'conferred at times as an entire group and at times in smaller groups out of earshot of plaintiffs and appeared at times to be talking on cell phones.' These facts, taken as true, do not establish a meeting of the minds among the

23

officers to violate the rights of the Smiths."); *Sherwin v. Piner*, No: 5:03 CV 275 H(3), 2003 WL 24051574, at *3 (E.D.N.C. July 22, 2003) ("The fact that plaintiff received an unfavorable determination in his workers compensation proceedings does not raise an inference of a conspiracy to deprive him of his constitutional rights."), *aff'd*, 91 F. App'x 312 (4th Cir. 2004).

A "mere speculation" and a "reliance on labels and conclusions" is insufficient to state a conspiracy claim. *Clarke*, 2015 WL 5254938, at *4 (citing *Twombly*, 550 U.S. at 555, 557); *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995) (granting a motion to dismiss "[b]ecause Plaintiff has only put forward broad allegations that do not indicate any actual violation of Plaintiff's civil rights, nor the existence of any [§ 1985] conspiracy"), *aff'd*, 87 F.3d 1308 (4th Cir. 1996). The equal protection conspiracy claims against Mr. Jones are dismissed.

### b. The Authority Defendants and Mr. Williams

The Authority and the board member defendants have moved to dismiss the conspiracy claim on the grounds that it is barred by the intracorporate conspiracy doctrine. (Doc. 33 at 15.) Mr. Williams makes a similar argument. (Doc. 39 at 14-15.) "The intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." *Painter's Mill Grille*, 716 F.3d at 352. The doctrine applies to municipalities and in civil rights cases. *See Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011). Mr. Hicks alleged that all board members and Mr. Williams acted as agents of the Authority. (Doc. 18 at ¶¶ 8-15.) On its face, the intracorporate conspiracy doctrine applies to protect the board

24

members and Mr. Williams from a conspiracy claim.

Mr. Hicks maintains that the board members are not all agents of the same corporation, because some are appointed by Surry County and some by the City of Mount Airy.  (Doc. 45 at 15-16; *see also* Doc. 18 at ¶¶ 8-14.)  He also alleges that the defendant board members participated in the conspiracy "as authorized representatives of Surry County and/or Mount Airy."  (Doc 18 at ¶ 127.)  However, the Authority is a "unit of local government" under North Carolina law.  (*See* Doc. 18 at ¶ 7(b).)  Mr. Hicks alleges no facts indicating that the board members acted as agents of the respective local governments that appointed them to the board as opposed on behalf of the Authority. Likewise, Mr. Hicks alleges that at all relevant times Mr. Williams acted as an agent for the Authority.  (Doc. 18 at ¶ 15.)  Because the individual board members and Mr. Williams were all agents of the Authority, the intracorporate conspiracy doctrine precludes them from being in a conspiracy with each other.

Mr. Hicks next contends that the intracorporate conspiracy doctrine does not apply when the alleged co-conspirators had a personal stake in achieving the object of the conspiracy, but he does not say what this personal stake might be.  (Doc. 45 at 16.)  To the extent he means that the board members were motivated by a personal bias against him, the "intracorporate conspiracy doctrine is not avoided simply by showing that corporate employees were motivated in part by personal bias."  *Painter's Mill Grille*, 716 F.3d at 353 (internal quotation omitted).  The personal interest must be "wholly separable" from the interests of the corporation for the exception to apply.  *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 846 (D. Md. 2013).

Mr. Hicks finally asserts that the intracorporate conspiracy doctrine does not apply because the acts of the board members and the attorney were not authorized by the Authority. (Doc. 45 at 16.) As to the attorney, the allegations of the complaint are directly in conflict with this argument, as Mr. Hicks alleges Mr. Williams at all times acted at the direction of the board. (*See* Doc. 18 at ¶¶ 15, 71-72.) As to the board member defendants, they could not as individuals terminate or decline to renew the lease; they could only do so by causing the Authority to so act, which they did by virtue of their authorized role as board members. (Doc. 18 at ¶ 29.) To the extent Mr. Hicks contends the members were acting outside their authority because their authority would never permit them to act "maliciously" or in violation of the Constitution, (Doc. 45 at 17), the Court does not find the unauthorized acts exception to go so far; if it did, it would swallow the rule.[6]

The conspiracy claims against all defendants are dismissed.

## IV. CONCLUSION

It may well be the case that some of the defendants disliked Mr. Hicks resented his disagreements over board policy in 2011 and 2012 and that this affected their decisions about his lease. This does not rise to the level of a violation of constitutional rights. Mr. Hicks has not nudged his claims of constitutional violations "across the line from

_____

[6] The unauthorized acts exception to the intracorporate conspiracy doctrine is less well recognized than the personal bias exception, *Buschi v. Kirven*, 775 F.2d 1240, 1253 n.4 (4th Cir. 1985.) Courts typically require more than Mr. Hicks alleged here to show that the acts were unauthorized, such as that the agent ignored the corporation's stated policies. *Hodgin v. Jefferson*, 447 F. Supp. 804, 807 (D. Md. 1978); *see also Chavez v. McIntyre*, 424 F. Supp. 2d 858, 861 (W.D. Va. 2006) (following *Hodgin*); *Fox*, 807 F. Supp. 2d at 499.

conceivable to plausible." *Twombly*, 550 U.S. at 570.

It is hereby **ORDERED** that the motions to dismiss by the defendant board members and Mount Airy-Surry County Airport Authority, (Doc. 32), by defendant Joseph Williams, (Doc. 38), and by defendant Roger Jones, (Doc. 40), are **GRANTED** and the case will be dismissed. Judgment will be entered concomitantly with this Order.

This the 9th day of December, 2015.

_____
UNITED STATES DISTRICT JUDGE